RENDERED: JANUARY 26, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1008-MR

ROGER MCCARTY                                                     APPELLANT


APPEAL FROM HOPKINS CIRCUIT COURT
v.      HONORABLE CHRISTOPHER BRYAN OGLESBY, JUDGE
ACTION NO. 21-CR-00001


COMMONWEALTH OF KENTUCKY                               APPELLEE

AND


NO. 2022-CA-1010-MR

ROGER MCCARTY                                                     APPELLANT


APPEAL FROM HOPKINS CIRCUIT COURT
v.      HONORABLE CHRISTOPHER BRYAN OGLESBY, JUDGE
ACTION NO. 21-CR-00089


COMMONWEALTH OF KENTUCKY                               APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: Roger McCarty (McCarty) appeals from the Hopkins Circuit Court order revoking his probation and imposing a six-year sentence of imprisonment.[1] We reverse and remand for the entry of a proper order.

## FACTS

In July of 2021, McCarty was placed on probation after he entered guilty pleas in two different indictments. One of the conditions of his probation was that he "complete long-term in-patient substance abuse treatment as arranged by P & P[2] or DPA[3] and remain incarcerated until a bed is available." An order was entered two days later releasing him from incarceration to be placed at the Crown Recovery Center in Washington County for addiction treatment. In that order, McCarty was directed to report to the Hopkins County Jail if he should leave the recovery program before completion.

---

[1] McCarty entered two guilty pleas; hence, there are two underlying case numbers and two corresponding appellate case numbers. In No. 21-CR-00001 (No. 2022-CA-1008-MR), McCarty entered a guilty plea to public intoxication, possession of synthetic drugs, 2nd offense, and possession of drug paraphernalia in exchange for a three (3) year sentence. In No. 21-CR-00089 (No. 2022-CA-1010-MR), he entered a guilty plea to fleeing or evading police in the second degree, and possession of a controlled substance, methamphetamine, in the first degree in exchange for another three (3) year sentence. Both sentences were probated for a period of five (5) years. Upon revocation, he was ordered to serve the six (6) year sentence.

[2] Probation & Parole.

[3] The Kentucky Department of Public Advocacy.

The next month, in August of 2021, a motion to revoke his probation was filed after he failed to complete the recovery program and did not present himself at the jail as ordered. Additionally, the motion cited a recent arrest for criminal trespass in the third degree in Hopkins County just four days after he was to begin the recovery program in Washington County. He failed to report to Probation & Parole once he was released from jail on a recognizance bond after the arrest. Instead, he was again arrested the same day he was released and charged with disorderly conduct in the second degree, public intoxication, and resisting arrest in Hopkins County.

He ultimately entered a guilty plea to all pending charges and received a sentence of 360 days with 30 days conditionally discharged. He was sanctioned by the court for the probation violation and was again ordered to complete drug abuse treatment after serving 120 days in jail.[4]

Not even a month later, a second motion to revoke his probation was filed. The motion stated that when McCarty was asked by his probation officer to complete paperwork for admission to a recovery program, he refused and denied having a substance abuse problem. In February of 2022, while the motion to

_____

[4] It was made clear at the revocation hearing held in August of 2022 that any allegations of violations which occurred before McCarty was sanctioned were not being offered as a basis for the present revocation, but to support the prosecution's position that McCarty was not amenable to continued probation.

revoke was pending, he was arrested and charged with criminal trespass in the third degree and possession of marijuana. And again, in June of 2022 he was charged with criminal trespass in the third degree.

A revocation hearing was held on August 1, 2022. Probation & Parole Officer James Davis (Davis) testified that McCarty had not been in contact with his office since January 26, 2022, when he denied needing drug treatment and refused to fill out forms for admission to a program. Davis testified revocation was necessary because a person who does not acknowledge having a substance abuse problem will not be accepted into a treatment program, a requirement of McCarty's continued probation.

McCarty testified that he had been unable to complete drug treatment due to circumstances beyond his control as he had been discharged from one program. When he enrolled in a different program run by another provider, arranged by his public defender, McCarty was soon transferred to Central State Hospital for psychiatric treatment.

After hearing testimony from McCarty and Davis, the Hopkins Circuit Court orally found that McCarty could not be appropriately managed in the community and ordered that his probation be revoked in both cases. A written order was entered revoking probation. McCarty appealed. Finding that neither the

oral ruling or the written order met the requirements of the law, we must reverse

and remand for the entry of a proper order.

## STANDARD OF REVIEW

We review determinations to revoke probation for an abuse of

discretion.

> The appellate standard of review of a decision to revoke
> a defendant's probation is whether the trial court abused
> its discretion. *Lucas v. Commonwealth*, 258 S.W.3d 806,
> 807 (Ky. App. 2008). To amount to an abuse of
> discretion, the trial court's decision must be "arbitrary,
> unreasonable, unfair, or unsupported by sound legal
> principles." *Clark v. Commonwealth*, 223 S.W.3d 90, 95
> (Ky. 2007), quoting *Commonwealth v. English*, 993
> S.W.2d 941, 945 (Ky. 1999). And an appellate court will
> not hold a trial court to have abused its discretion unless
> its decision cannot be located within the range of
> permissible decisions allowed by a correct application of
> the facts to the law. *Miller v. Eldridge*, 146 S.W.3d 909,
> 915 (Ky. 2004).

*Blankenship v. Commonwealth*, 494 S.W.3d 506, 508 (Ky. App. 2015).

## ANALYSIS

We once again are presented with the opportunity to review a

probation revocation order to ensure compliance with both the statutory dictates of

Kentucky Revised Statute (KRS) 439.3106 and the requirements of cases of the

appellate courts interpreting those dictates.

To summarize the genesis and jurisprudence on this issue, in 2011

House Bill 463 was passed by the Kentucky General Assembly. The intent of the

-5-

law was to "maintain public safety and hold offenders accountable while reducing recidivism and criminal behavior and improving outcomes for those offenders who are sentenced." KRS 532.007(1). Several statutes were created to accomplish this goal, among them those covering probation and other forms of release, one of those being KRS 439.3106:

> (1) Supervised individuals shall be subject to:
>
> > (a) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or
> >
> > (b) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

In *Commonwealth v. Andrews*, the Supreme Court of Kentucky determined that to comply with the dictates of the statute, a trial court must first find *both* that the offender presents a significant risk to prior victims or the community *and* that he or she could not be appropriately managed in the community before properly revoking probation. 448 S.W.3d 773, 780 (Ky. 2014).

Since the *Andrews* decision, the requirements of a proper revocation order have been refined. In *Helms v. Commonwealth*, this Court reversed a trial court which failed to ensure sufficient evidence was presented to support a finding that the probationer was a danger to his prior victims or the community and could not be properly managed in the community. In so doing, this Court stated:

> [The] final order parroted the statutory language that Helms's violations demonstrate he is "a significant risk to the public" and "that he cannot be properly managed within community and that [his] behavior demonstrates that there are no workable alternatives to incarceration[.]" Thus, the trial court was aware of the KRS 439.3106 criteria and stated the ultimate findings of fact in its order.
>
> If the penal reforms brought about by HB 463 are to mean anything, perfunctorily reciting the statutory language in KRS 439.3106 is not enough. There must be proof in the record established by a preponderance of the evidence that a defendant violated the terms of his release and the statutory criteria for revocation has been met.

475 S.W.3d 637, 645 (Ky. App. 2015).

Most recently, we determined that the decision in *Helms* did *not* require that the trial court engage in a detailed analysis of how the evidence supported its conclusions that the probationer presented a danger to his victim or the community at large and could not continue to be managed in the community.

> In other words, we cannot affirm the revocation of probation simply because the revocation order contains the requisite statutory findings. A revocation unsupported by evidence of record would not be "within

the range of permissible decisions allowed by a correct application of the facts to the law." *McClure* [*v. Commonwealth*], 457 S.W.3d [728, 730 (Ky. App. 2015)]. Instead, we may affirm a decision to revoke probation only if: a) the court made the required findings, *and* b) those findings are supported by the record. We emphatically reiterate that *Helms* does not mean that a court must provide detailed explanations for the findings required by KRS 439.3106.

*Kendrick v. Commonwealth*, 664 S.W.3d 731, 735 (Ky. App. 2023).

The present case presents us with the inverse of *Kendrick.* In this case, the trial court failed to make either an oral or written finding that McCarty constituted a danger to prior victims or the community at large. The court's order did state that it found McCarty could not be properly managed in the community, but the failure to even mention whether he presented a danger to victims or the community constitutes error.[5]

While the record may be replete with evidence to support the conclusion that McCarty was a danger to prior victims or the community, the trial court must either state such orally or in writing to comply with the dictates of KRS

---

[5] We note that the order was prepared by the prosecution for the judge's signature at the trial court's direction. The order was seen and agreed to by counsel for McCarty, but our prior cases have held that this is an issue which can be reviewed for palpable error. *See Burnett v. Commonwealth*, 538 S.W.3d 322, 324-25 (Ky. App. 2017) ("Regardless, even if we were to find that the issue unpreserved, we must nevertheless conclude that the circuit court's failure to make the statutory findings required by KRS 439.3106 constitutes palpable error under Kentucky Rules of Criminal Procedure (RCr) 10.26. Though the circuit court made a finding that Burnett cannot be managed in the community, it did not make a finding that he was a significant risk to the community. Both findings are required."). We caution courts to ensure prepared orders are sufficient before entry.

439.3106 and caselaw. The trial court never mentioned in its oral ruling, and it is not contained in the order, that it found McCarty was a danger to his prior victims or the community at large. We cannot assume that the trial court found this factor simply because there may be sufficient evidence in the record, despite the Commonwealth's contentions we may do so. The trial court failed to enter a sufficient order, and this was error.

## CONCLUSION

Before revoking probation, a trial court must first, either orally or in writing, make a finding that the probationer is a danger to prior victims or the community *and* that he cannot be managed in the community. *Andrews*, *supra*, 448 S.W.3d at 780. There must also be sufficient evidence in the record to support both determinations. We reverse the Hopkins Circuit Court and remand this matter with instructions to enter an order which complies with the law.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Roy A. Durham, II
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Matthew F. Kuhn
Solicitor General

Rachel A. Wright
Assistant Solicitor General
Frankfort, Kentucky